UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOBSON BROTHERS
CONSTRUCTION COMPANY,

    Plaintiff,

v.                                       Case No. 8:13-cv-1553-T-27MAP

ARR-MAZ PRODUCTS, L.P.,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Arr-Maz Products, L.P.'s renewed motion to dismiss (doc. 51) and Plaintiff Dobson Brothers Construction Company's response (doc. 55).[1] Also before me are the supplemental briefings (docs. 66, 67) the parties submitted at my request after the November 14, 2013, hearing on the motion. Upon consideration, I recommend that the District Judge deny Defendant's motion as to Plaintiff's implied warranty claims (Counts Two and Three) and grant Defendant's motion as to Plaintiff's deceptive trade practices claim (Count Six).[2]

    *A.*     *Background*

Plaintiff is a Nebraska corporation selected by the Oklahoma Department of Transportation as the general contractor for several major road projects (Amended Cmplt., doc. 17 at 1-2). To complete the projects, Plaintiff purchased anti-strip (a chemical that helps improve adhesion between asphalt and aggregate) from Defendant. The first of the seven transactions relevant to this case

---

[1] The District Judge referred this motion to me for a report and recommendation (doc. 56).

[2] As discussed in more detail in this report, Plaintiff initially filed this action in the District of Nebraska. That court transferred the matter to this district for the reasons set our in the transfer order (doc. 29).

occurred in 2010. The transactions proceeded as follows: (1) Plaintiff called Defendant with an order; (2) Defendant delivered the agreed-upon amount of anti-strip to Oklahoma; (3) at approximately the same time, Defendant sent an invoice to Plaintiff's Nebraska office; and then (4) Plaintiff submitted payment (*Id.* at 3-4). There were no written purchase orders. The only forms memorializing the parties' agreements were the invoices Defendant sent to Plaintiff. On the reverse side of each of the invoices were identical terms and conditions, including a venue and choice of law provision and a warranty disclaimer (doc. 51, ex. A-B). Plaintiff accepted each of the seven anti-strip deliveries and paid the invoices in full. At the time of Plaintiff's oral purchase orders, the parties did not discuss the invoices' provisions.

Although this case involves seven transactions, since 2000 the parties have engaged in hundreds of thousands of dollars' worth of anti-strip transactions in a similar fashion (doc. 17 at 4) ("Dobson and Arr-Maz conducted business like this for several years. In total, Dobson has ordered hundreds of thousands of dollars in anti-strip from Arr-Maz since August 28, 2000."). In 2011, however, in connection with its Oklahoma road projects, Plaintiff started having problems with its asphalt mixture. After extensive and expensive testing, Plaintiff traced its problems to Defendant's defective anti-strip. In early 2013, Plaintiff sued Defendant in the District of Nebraska for breach of contract, breach of implied warranties of fitness and merchantability, breach of express warranties, revocation, and violations of Nebraska's Uniform Deceptive Trade Practices Act (NUDTPA).

In ruling on Defendant's motion to dismiss in the Nebraska case, United States District Judge John Gerrard found that "the parties did establish a course of dealing which incorporated the forum selection clause [on the back of the invoices], and further finds that the outcome is the same under [UCC] § 2-207." (Doc. 29 at 5). The forum selection clause reads: "The exclusive venue of any

action to interpret or enforce this agreement shall be the state or federal courts having jurisdiction in Polk County, Florida." (Doc. 51, ex. 1 at 3).[3] Pursuant to 28 U.S.C. § 1404(a), Judge Gerrard transferred the case (and the remaining issues Defendant raised in its motion to dismiss) to this Court.

Defendant re-filed its motion in this Court (doc. 51). Defendant argues that the Court should dismiss Plaintiff's claims for breach of implied warranties because Defendant's invoices expressly disclaim these warranties. Relying heavily on Judge Gerrard's transfer order, Defendant asserts that the invoices' terms and conditions are incorporated into the parties' agreement and should be enforced. Plaintiff's NUDTPA claim should also be dismissed, Defendant argues, because that statute provides only for injunctive relief.

For its part, Plaintiff contends that not all of the terms and conditions were incorporated into the parties' agreement and, alternately, that some terms may have been incorporated into later transactions but not earlier ones (doc. 55). Plaintiff also points to UCC § 2-207 and argues that the warranty disclaimers on the invoices materially alter the parties' agreement; thus, under the UCC they cannot be incorporated into the contract without the express agreement of both parties. Plaintiff emphasizes that Judge Gerrard's transfer order applies only to the forum selection clause and that Defendant "overstates the breadth of the Nebraska Court's decision in an attempt to strong-arm the remaining issues to be decided into the scope of that decision." (*Id.* at 1). Nonetheless, Plaintiff relies heavily on footnote seven of that order, in which Judge Gerrard observes that "as to some of

---

[3] A document attached to a motion to dismiss can be considered without converting the motion into one for summary judgment if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The invoices are both. Each of the seven invoices contains the same provisions.

3

the earlier of the seven transactions, the forum selection clause may not have been incorporated." (Doc. 29 at 10, fn. 7). As for its NUDTPA claim, Plaintiff asserts it seeks rescission, a remedy authorized by the statute.

      B.      *Standard of Review – Fed. R. Civ. P. 12(b)(6)*

The Federal Rules of Civil Procedure generally do not require a plaintiff to set out in detail the facts upon which it bases its claim. Instead, all that ordinarily is required is that the claimant set forth a "short and plain statement of his claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) *(*quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); Fed.R.Civ.P. 8(a)(2). Hence, while a plaintiff attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, he is obliged to provide the "grounds" of his "entitlement to relief," more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise [the claimant's] right to relief above the speculative label on the assumption that all of the complaint's allegations are true." *Id.* at 556 (citations omitted).

      C.      *Counts Two and Three – Breach of Implied Warranties*

          1.      *Governing Law*

The first issue is whether this Court should apply Florida, Oklahoma, or Nebraska law to analyze Plaintiff's breach of implied warranties claims.[4] I find that Florida law governs. The

---

[4] Neither party disputes that this controversy arises from a sale of goods between merchants, subjecting it to the provisions of Article Two of the UCC. Florida, Nebraska, and Oklahoma have adopted the UCC. Nonetheless, state law enactments and interpretations of the UCC vary. *See Premix-Marbletite Mfg Corp. v. SKW Chem., Inc.*, 145 F.Supp.2d 1348, 1353 (S.D. Fla. 2001).

District of Nebraska, analyzing the laws of both Nebraska (where Plaintiff is headquartered) and Oklahoma (where Defendant delivered the anti-strip), determined that the forum selection clause on the back of the invoices is enforceable. This provision is titled, "Entire agreement/governing law/venue" and reads:

> The above terms and conditions constitute the entire agreement between the Buyer and Seller, and there are no representations or warranties of any kind, express or implied, not expressly set forth herein. **This agreement shall be governed, enforced and interpreted under Florida law, except for its conflict of law provisions.** The exclusive venue of any action to interpret or enforce this agreement shall be the state or federal courts having jurisdiction in Polk County, Florida.

(Doc. 51-1 at 3) (emphasis added). The Nebraska court analyzed the last sentence. Relevant now is the immediately preceding choice of law provision.

"Following a § 1404(a) transfer, the receiving court should treat pre-transfer rulings by the transferring court in much the same way as one district judge treats the rulings of a colleague." Wright & Miller, Fed. Prac. & Proc. § 4478.4. However, "[a] decision to describe deference to another court in law-of-the-case terms does not command obedience. All that is involved is a decision to forgo *de novo* reconsideration." *Id*. "As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (citation and quotations omitted); *see Murphy v. FDIC*, 208 F.3d 959 (11th Cir. 2000). Further, "[f]ederal courts routinely apply law-of-the-case principles to transfer decisions to coordinate courts." *Id*. The prior ruling of the transferor court "may only be reconsidered when the governing law has been changed by a subsequent decision of a higher court, when new evidence becomes available, when a clear error has been committed, or

to prevent manifest injustice." *Thunderware, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1564 (S.D. Fla. 1997).

These circumstances are not present here. Judge Gerrard's ruling regarding the enforceability of the forum selection clause is well-reasoned and legally sound. I will not revisit it. It would be nonsensical for this Court to uphold the final sentence of the provision (forum selection) but not the preceding one (choice of law). Additionally, Florida's enactment of the UCC gives effect to choice of law provisions contained in contracts. *See* Fla. Stat. § 671.105(1). Florida, Nebraska, and Oklahoma have each adopted the UCC, and the result under any of these states' laws would be substantially the same. With this in mind, I analyze Plaintiff's breach of implied warranty claims under Florida law.[5]

### 2.  *Course of Dealing*

Plaintiff's counts two and three allege breaches of the implied warranties of merchantability and fitness for a particular purpose, respectively. Defendant moves to dismiss these claims because on the back of each of the seven anti-strip invoices is a term which purports to waive implied warranties. According to Defendant, Plaintiff's repeated ordering of anti-strip, together with its failure to object to the invoices' terms, established a course of dealing such that the warranty waiver became a part of the parties' agreements. Plaintiff counters that its failure to object to the terms cannot be construed as acceptance of them.

Because this case involves diversity jurisdiction and the enforcement of Florida law, I must

---

[5] I address the related issue of whether the choice of law provision applies to Plaintiff's tort claim (its NUDTPA claim) in the section addressing that cause of action.

decide the approach Florida courts would apply in these circumstances.[6] Both parties agree that under Florida's enactment of the UCC, a merchant may disclaim the implied warranties of merchantability and fitness provided that the disclaimer is in writing and conspicuous, and provided that the disclaimer is part of the parties' bargain. Fla. Stat. § 672.316(2); *see Bowdoin v. Showell Growers, Inc.,* 817 F.2d 1543, 1545 (11th Cir. 1987). Here, the warranty disclaimer was on the back side of each of the seven invoices. The bottom of the front of each invoice stated, "Subject to terms and conditions on back." (Doc. 51, ex. A at 2). On the reverse, "in small but readily legible type" (doc. 29 at 3), was the following:

> IF THESE TERMS DIFFER FROM THOSE CONTAINED IN YOUR ODER, AND YOU ACCEPT THE GOODS SOLD HEREUNDER, YOU ALSO ACCEPT THE TERMS HEREIN AND ON THE REVERSE SIDE HEREOF, AND THE TERMS HEREIN SHALL OVERRIDE ANY CONFLICTING TERMS IN YOUR ORDER, TO THE EXTENT THEY CONFLICT WITH THE TERMS HEREOF, UNLESS WE RECEIVE FROM YOU WRITTEN NOTICE TO THE CONTRARY WITHIN 10 DAYS OF DELIVERY OF GOODS, OR RECEIPT OF THIS AGREEMENT, WHICHEVER OCCURS FIRST.
>
> 1. Agreement: Seller accepts no terms and conditions other than those set forth below or in any existing written supply contract between Seller and Buyer covering any Product listed in this invoice. Seller rejects any proposed terms and conditions of Buyer which conflict with or differ from the terms and conditions set forth herein or on the reverse side.
>
> ***
>
> 5. Warranty: Seller does not warrant merchantability or fitness for a particular purpose. Seller warrants only that Product delivered hereunder meets Seller's standard specifications for the Product, or such other specifications as have been expressly agreed upon with Buyer in writing. Seller's responsibility or liability for this warranty is limited by the terms and conditions of this agreement as set forth on both sides of the agreement, and in any event will not exceed the purchase price of the

---

[6] Judge Gerrard properly looked to Oklahoma and Nebraska laws and found that the parties established a course of dealing which incorporated the forum selection clause under either state's law (doc. 29 at 5).

goods sold hereunder that are in violation of the warranty.

(Doc. 55, ex. A at 3). Although the warranty disclaimer is on the reverse side of the invoice, it is conspicuous. *Cf. Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, No. 02-60703, 2004 WL 4946483, at * 9 (S.D. Fla. Apr. 27, 2004) ("a provision on the reverse side of a disclaimer is not per se inconspicuous."). The issue, then, is whether the warranty disclaimer was a part of the parties' bargain. To answer this, I must analyze the parties' course of dealing. *See* Fla. Stat. § 672.316(3)(c) (stating that "an implied warranty can be excluded or modified by course of dealing or course of performance or usage of trade."); *Am. Coach Lines of Orlando, Inc. v. N. Am. Bus Indus., Inc.*, No. 6:09-cv-1999-Orl-19GJK, 2011 WL 653524, at * 10 (M.D. Fla. Feb. 14, 2011) (a disclaimer of implied warranties is valid if buyer knew of disclaimer at time of sale, with proof of knowledge being either direct or indirect through evidence of course of dealing).

Section 671.205(2), Fla. Stat., defines "course of dealing" as "a sequence of conduct concerning previous transactions between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Fla. Stat. § 671.205(2). A course of dealing is "relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement." Fla. Stat. § 671.205(4). Rather than modifying an agreement, a course of dealing becomes a part of the agreement at its inception and reveals "the bargain of the parties in fact . . . informing the nature and extent of the parties' obligations to each other." *See Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 396 (7th Cir. 1992) (citation omitted) (interpreting Illinois enactment of UCC).

The UCC's course of dealing provision is meant as an aid for interpreting contracts by

considering the conduct between the parties *before* the contract was entered, not after. *Rhodes v. BLP Assoc., Inc.*, 944 So.2d 527, 530 (Fla. 4th DCA 2006). A course of dealing demonstrating the regular application of a particular warranty disclaimer is not established by a single prior transaction or occurrence. *Am. Coach Lines of Orlando,* 2011 WL 653524, at * 14 n. 4. The Nebraska Court recognized this: "Although one transaction is of course insufficient . . . three to four may be enough, especially if additional circumstances suggest a course of dealing." (Doc. 29 at 9-10).

Judge Gerrard has already determined the parties' conduct established a course of dealing that incorporated at least one of the invoices' terms (the forum selection clause) into at least some of the transactions. He observed that this case involves "two businesses engaging in identical transactions over an extended period of time, for substantial amounts of money" (*Id*. at 7), and found it reasonable to assume that Plaintiff assented to the invoices' terms and that those terms reflect the parties' bargain in fact. Specifically, Judge Gerrard found that the highest courts of both Nebraska and Oklahoma would likely follow the approach of the Second Circuit in *New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997). Under *New Moon*, an offeree's failure to object can mean "tacit acceptance of a clause repeatedly sent to the offeree in an order confirmation document." *Id*. at 31. Judge Gerrard rejected the Third Circuit's decision in *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 939 F.3d 91, 98 (3d Cir. 1991), which stands for the counter proposition that "the repeated sending of a writing which contains certain terms, without any action with respect to the issues addressed by those terms, cannot constitute a course of dealing." *Id*. at 104.

The parties have not pointed me to any case interpreting Florida law that has addressed this precise question. In *Premix-Marbletite*, 145 F.Supp.2d at 1356, the Southern District of Florida,

interpreting Florida law, found that "[t]erms and conditions contained in a form continually sent by one party do not constitute performance and cannot become binding as a course of dealing." The *Premix-Marbletite* court cited *Step-Saver*. *Id*. This would be compelling support for Plaintiff's position that the invoices' terms are not a part of the agreement, except the parties in both *Premix-Marbletite* and *Step-Saver* had exchanged conflicting boilerplate forms. Here, the only forms involved are Defendant's invoices. Plaintiff did not submit written purchase orders or any other contract terms to Defendant; Plaintiff simply picked up the phone, asked Defendant to ship a certain quantity of anti-strip, and then paid the invoice (which contained the warranty disclaimer) once the shipment arrived. Before now, Plaintiff never objected to the terms on the invoices.

The only other relevant case applying Florida law that cites either *New Moon* or *Step-Saver* is *Salco Distributors, LLC v. iCode, Inc.*, No. 8:05-CV-642-T-27TGW, 2006 WL 449156, at * 3 (M.D. Fla. Feb. 22, 2006). In *Salco*, which involved a shrinkwrap and clickwrap contract,[7] United States District Judge James Whittemore upheld a forum selection clause contained in the parties' agreement and transferred the case to the Eastern District of Virginia rather than dismiss it. 2006 WL 449156, at *4. The plaintiff (the software purchaser) "accepted the terms when it opened the software envelope, clicked 'I accept' before installation, installed the software, clicked 'I accept' again before registration, and registered the software with Defendant. . . . Plaintiff's conduct was sufficient to evidence its agreement with the terms proposed by Defendant." *Id*. at * 3. Judge Whittemore distinguished *Step-Saver* and found that UCC § 2-207 (discussed below) did not apply

---

[7] A shrinkwrap contract is an agreement that becomes effective as soon as a customer removes the plastic or cellophane wrapping off of a product. A clickwrap contract refers to an agreement that requires a computer user to read the agreement and click "I accept" before proceeding to the next screen or obtaining information. *Salco*, 2006 WL 449156, at *2 n.5.

10

because, like here, the parties did not exchange conflicting forms. *Id*. Clearly, by citing *Step-Saver*, Judge Whittemore was not endorsing the proposition that a plaintiff's silence cannot establish a course of dealing. To the contrary, in *Salco*, the plaintiff's failure to question or object to the terms indicated its acceptance of them.

But *Salco* is easily distinguishable as well. In this case, Plaintiff never affirmatively indicated its acceptance of the terms, unlike with a clickwrap contract where the buyer must click "I accept." Further, *Salco* did not involve a course of dealing analysis because there was only one transaction between the parties. Here, the parties have engaged in business in a similar fashion since 2000. Of course, only in 2010 did Plaintiff take issue with Defendant's product and, as is usually the case when a dispute arises, only as a part of this case has it objected to the invoices' terms.

Complicating matters is that only the seven invoices at issue are a part of the record. Judge Gerrard stressed this, too (*see* Doc. 29 at 4).[8] Consequently, in his much-scrutinized footnote seven, Judge Gerrard found that the forum selection clause was incorporated into the parties' agreement "no later than (and possibly before) the first three to four transactions." (*Id*. at 10, fn. 7). This comports with Florida's course of dealing law, which requires the Court to analyze the parties' conduct before the transaction(s) at issue, not after. *Rhodes*, 944 So.2d at 530. "[I]n the interests of simplicity and judicial economy," however, Judge Gerrard transferred the entire case, even though the forum selection clause may have been involved in only half of the transactions (Doc. 29 at 10, fn. 7).

With this in mind, I conclude that this case presents at least two close questions. First, do

---

[8] He noted: "[A]lthough Dobson has alleged that it and Arr-Maz conducted business in a similar manner for several years, neither party has alleged or shown whether the same terms and conditions were previously included in Arr-Maz's invoices." (Doc. 29 at 4). Plaintiff confirmed at the hearing before me that "there is no evidence before this Court about the prior decade of transactions, whether or not those had the same terms and conditions or not." (Doc. 64 at 32).

Florida courts follow the *New Moon* or the *Step-Saver* approach? Second, is the question appropriately resolved at the motion to dismiss stage? I do not need to answer the former because my answer to the latter is no.

Whether a course of dealing exists between parties to a transaction is a question of fact. *Capitol Converting Equip., Inc.*, 965 F.2d at 395; *Perfumeria Ultra, S.A. de C.V. v. Miami Customs Serv., Inc.*, 231 F.Supp.2d 1218 (S.D. Fla. 2002) (granting summary judgment where it was undisputed that each of the over 600 invoices contained same terms and conditions, buyer knew of the conditions, and buyer did not object to them). Where the material facts are uncontested, however, course of dealing may be determined as a matter of law. *See JHF Vista USA, Ltd. v. John S. Connor, Inc.*, No. CCB-09-30, 2010 WL 481327, at * 5 (D. Md. Feb. 5, 2010) (denying summary judgment motion because the parties did not agree on the number of invoices sent and there were no "additional circumstances indicating the parties agreed to the terms.").

In this case the issue of when a course of dealing came into existence is inappropriate for a 12(b)(6) analysis. In its complaint, Plaintiff characterizes the parties' anti-strip transactions since 2010 as conducted pursuant to a single agreement rather than seven separate contracts (*see* doc. 17 at 6-9). There is insufficient record evidence regarding which of these seven transactions resulted in the shipment of defective anti-strip (doc. 64 at 28-29). Without knowing if the prior invoices (pre-2010) contained the same terms and conditions as the seven at issue here, I cannot determine when the course of dealing began and whether the invoices' terms were incorporated into all of the transactions or a subset of them. *See, e.g., Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.*, 201 F.3d 1111, 1112 (9th Cir. 2000) (finding that 47 prior transactions between the parties establish course of dealing informing their 48th transaction); *Indep. Mach., Inc. v. Kuehne & Nagel, Inc.*, 867

F. Supp. 752, 765 (N.D. Ill. 1994) (five previous transactions were enough to establish course of dealing as to the sixth transaction because the prior transactions involved identical invoices). Although Defendant cites *Waukesha Foundry, Inc. v. Industrial Engineering, Inc.*, 91 F.3d 1002, 1009-10 (7th Cir. 1996), for the proposition that the same transactions that establish a course of dealing can form the basis of a breach of contract claim, I do not read that case so broadly. What is more, the Seventh Circuit in *Waukesha* affirmed the district court's granting of a summary judgment motion; it did not involve a Fed. R. Civ. P. 12(b)(6) analysis.[9]  *Id*.

This motion presents a close call. This is especially so in light of Judge Gerrard's finding (under Nebraska and Oklahoma law) that a course of dealing existed between the parties. However, under Florida law, there is insufficient record evidence for the Court to decide at this stage of the case whether the parties' course of dealing incorporated all of the invoices' terms as a part of their bargain in fact. Thus, Plaintiff's implied warranty claims survive a 12(b)(6) challenge. I recommend that the District Judge deny Defendant's motion to dismiss as to the these counts.

        3.     UCC § 2-207

Plaintiff urges the Court to analyze its claims under Fla. Stat. § 672.207, Florida's adoption of UCC § 2-207.[10] According to Plaintiff, the warranty disclaimer materially alters the parties'

---

[9] Also, the parties in *Waukesha* had exchanged writings containing conflicting terms. *Id*.

[10] This provision states:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

agreement under this provision and cannot become a part of the contract without Plaintiff's express acceptance of it.

Section 2-207 is known as the "battle of the forms" provision and is designed to "fill the gaps" in the situation where the buyer submits an order, the seller fills the order, and both parties exchange forms with self-serving boilerplate language. *Option Wireless, Ltd. v. OpenPeak, Inc.*, No. 12-80165-CIV, 2012 WL 6045936, at * 4 (S.D. Fla. Dec. 5, 2012). Whether an alteration is material requires "an inquiry into the circumstances of the parties' relationship, expectations, and course of dealing." *Waukesha Foundry*, 91 F.3d at 1008. "In other words, course is dealing is still relevant to the Court's analysis." (Doc. 29 at 13).

But I do not need to reach this question. This case does not present me with a classic "battle of the forms" scenario. In *Salco*, Judge Whittemore observed that § 2-207 addresses the terms of a contract "when the parties' conduct establishes a contract, but the parties have failed to adopt expressly a particular writing as the terms of their agreement, *and the writings exchanged by the parties do not agree*." 2006 WL 449156, *citing Step-Saver*, 939 F.2d at 98 (emphasis added). Judge Whittemore found that *Salco* was "not a battle-of-the-forms case, in which the parties exchange[d] incompatible forms and a court must decide which prevails." *Id*. (citation and internal quotations

---

(a) The offer expressly limits acceptance to the terms of the offer;
(b) They materially alter it; or
(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code. Fla. Stat. § 672.207(2).

omitted). Similarly, the parties here did not reach an agreement and subsequently exchange "conflicting purchase order forms and acknowledgment and acceptance forms." *Paul Gottleib & Co., Inc. v. Alps South Corp.*, 985 So.2d 1, 5-6 (Fla. 2d DCA 2008). The only writing is Defendant's invoice.[11] Hence, Plaintiff's battle of the forms argument does not persuade me to alter my recommendation that the District Judge deny Defendant's motion to dismiss.

    D.        *Count Six – NUDTPA Violation*

In Count Six, Plaintiff alleges that Defendant violated NUDTPA by making "misleading, false or deceptive" representations in providing Plaintiff with anti-strip (doc. 17 at 10). Plaintiff contends that Defendant knew or should have known that many of its representations were false. Plaintiff alleges damages "in an amount not less than $569,446.89." (*Id*. at 11).[12]

First, I recommend that Defendant's motion be granted and Plaintiff's NUDTPA claim be dismissed because that statute creates a private right of action for injunctive relief only. Nebraska courts have consistently found that injunctive relief is the only remedy under the NUDTPA. Neb. Rev. Stat. § 87-303; *Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 248 (Neb. Ct. App. 2007)

---

[11] Although I do not make a recommendation as to when a course of dealing was established, I also agree with Judge Gerrard that § 2-207 does not apply when the terms of the parties' contract have already been established by their course of dealing (doc. 29 at 11).

[12] Judge Gerrard held that the forum selection clause "which only applies to 'action[s] to interpret or enforce' the parties' contracts (filing 26-1 at 3), does not apply to Dobson's NUDTPA claim." (Doc. 29 at 13). The parties submitted supplemental briefings to me on the topic of whether the choice of law provision in the invoices also applies to Plaintiff's tort claim (docs. 66, 67). Plaintiff argues that it does not, Defendant advances the opposite contention. I agree with Judge Gerrard's reasoning and recommend that the District Judge find that the choice of law provision does not apply to Plaintiff's NUDTPA claim. The next obvious question is which law applies in the absence of a choice of law provision. I do not need to answer this question at this point, however, because Plaintiff's NUDTPA claim does not assert a cause of action under Nebraska law and does not comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b).

(finding that NUDTPA provides relief from future damages, not past damages); *Triple 7, Inc. v. Intervet, Inc.*, 338 F.Supp.2d 1082, 1087 (D. Neb. 2004); *Azike v. E-Loan, Inc.*, No. 8:09CV37, 2009 WL 1664072, at *3 (D. Neb. June 11, 2009) (noting that Nebraska courts routinely dismiss a plaintiff's claims under NUDTPA if the plaintiff fails to file a claim for injunctive relief."). Plaintiff seeks monetary damages as a remedy in Count Six, as presently worded (doc. 17 at 11). Thus, Plaintiff's Count Six should be dismissed for failure to state a claim under Nebraska law.

Second, although Defendant does not raise this argument, under Fed. R. Civ. P. 9(b), all averments of fraud or mistake are subject to heightened pleading requirements. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In the fraud context, the Eleventh Circuit has stated:

> While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) then; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

The rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citation and quotations omitted). Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud. *Id*.

Here, Plaintiff alleges that Defendant's "deceptive trade practices include, but are not limited to, representing that the anti-strip had characteristics, uses, or benefits that it did not have, and that the anti-strip was of a particular standard, quality or grade when in fact it was not." (Doc. 17 at 10-11). The complaint is devoid of any reference to any specific statements or representations, when they were made, and how they misled Plaintiff. As such, the claim fails under Fed. R. Civ. P. 9(b).

E.   *Conclusion*

For the reasons stated above, I recommend that Defendant's motion to dismiss (doc. 51) be denied as to Plaintiff's implied warranty claims (Counts Two and Three) and granted as to Plaintiff's NUDTPA claim (Count Six).

IT IS SO REPORTED at Tampa, Florida on December 9, 2013.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).